## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DWAYNE VOLKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  10-2132 |
| | ) | |
| MICHAEL RANDLE, ROGER WALKER, | ) | |
| LEE RYKER, MARC HODGE, BRIAN | ) | |
| STAFFORD, and BARBARA HESS, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Motion for Summary

Judgment (d/e 17 ) filed by Defendants Michael Randle, Roger Walker,

Lee Ryker, Marc Hodge, Brian Stafford, and Barbara Hess.

Plaintiff Dwayne Volkman is employed by the Illinois Department

of Corrections (IDOC) as a Casework Supervisor at the Lawrence

Correctional Center.  Plaintiff received a written reprimand purportedly

for failing to answer a question during an internal investigation.  Plaintiff,

believing he was in fact retaliated against for speaking to the State's

Attorney, brought suit against Defendants.

In his Complaint, Plaintiff alleged Defendants retaliated against him for (1) his speech to the State's Attorney (Count I); and (2) his political affiliation (Count II). Plaintiff sued (1) Randle, the Director of DOC, in his official capacity; (2) Walker, the former Director of DOC, in his individual and official capacity; (3) Ryker, who at the relevant time was the Warden of the Lawrence Correctional Center, in his individual and official capacity; (4) Hodge, who at the relevant time was employed as an Internal Affairs investigator and/or Assistant Warden of Operations of the Lawrence Correctional Center, in his individual and official capacity; (5) Stafford, who at the relevant time was employed as a Sergeant or Lieutenant at Lawrence Correctional Center, in his individual and official capacity; and (6) Hess, who at the relevant time was employed as an Administrative Assistant 2 for DOC, in her individual and official capacity.

In his Response to the Motion for Summary Judgment, Plaintiff consents to the dismissal of Count II, the political affiliation claim, and

agrees that Defendants Randle, Walker, and Stafford do not have the requisite personal involvement to warrant liability. Therefore, this Court will examine only Count I against Defendants Hodge, Ryker, and Hess.

Defendants have moved for summary judgment asserting that Plaintiff's speech was not constitutionally protected, Plaintiff did not suffer a deprivation likely to deter speech, and Plaintiff failed to prove that his speech was a "but-for" cause of the written reprimand. Defendants also assert they are entitled to qualified immunity.

This Court finds that, for purposes of summary judgment, Plaintiff has demonstrated that his speech to the State's Attorney was constitutionally protected, that Plaintiff suffered a deprivation likely to deter speech, and that a question of fact remains whether Defendants Hodge, Ryker, and Hess retaliated against Plaintiff due to his speech to the State's Attorney. This Court further finds that Defendants Hodge, Ryker, and Hess are not entitled to qualified immunity.

# I. FACTS

## A.    Investigation Regarding Officer Jody Burkhardt

On June 26, 2008, IDOC completed an investigation regarding

Officer Jody Burkhardt that revealed, among other things, that Officer

Burkhardt brought his personal cellular telephone into the Lawrence

Correctional Center and used it to make approximately twenty personal

phone calls.  (Defendants' Undisputed Fact 1).  The results of Officer

Burkhardt's investigation were forwarded to Defendant Ryker, the

Warden of the Lawrence Correctional Center at the time, and Lawrence

County State's Attorney Patrick Hahn.  (Defendants' Undisputed Fact

2).

On June 30, 2008, the Lawrence County State's Attorney filed

criminal charges against Officer Burkhardt. Those charges stated that:

> . . . [O]n or about the 8th of May, 2008 the
> offense of UNAUTHORIZED BRINGING OF
> CONTRABAND INTO A PENAL INSTITUTION
> BY AN EMPLOYEE was committed at Lawrence
> Correctional Center . . . and that the undersigned
> has just and reasonable grounds to believe that
> Jody Burkhardt committed said offense in that he
> then and there being an employee of a penal

> institution, knowingly and without authority of
> any person designated or authorized to grant such
> authority, brought an item of contraband, a
> cellular telephone, into the Lawrence Correctional
> Center, a penal institution.

Defendants concede that charges filed by the State's Attorney on June 30, 2008, and the written content of those charges, were a matter of public record.  (Plaintiff's Undisputed Fact 6).[1]

On July 3, 2008, a stop order was issued at Lawrence Correctional Center that prohibited Officer Burkhardt from entering the prison. (Defendant's Undisputed Fact 4).  Officer Burkhardt was also placed on administrative leave.  (Defendants' Undisputed Fact 4).  Officer Chad Ray acted as a union representative for Officer Burkhardt on July 3, 2008, in connection with the stop order and lockout process. (Defendants' Undisputed Fact 5).

**B.  Officer Ray's Communications with Correctional Employees**

On July 3, 2008, Officer Ray approached Lawrence Correctional Center employees, including Plaintiff, in a lunchroom and told them that

---

[1] Defendants did not dispute this fact although they claimed that fact was immaterial.  In fact, Defendants asserted that the majority of Plaintiff's additional facts were immaterial.

Officer Burkhardt had been charged with a crime for the use of his cell phone. (Defendants' Undisputed Fact 6). Officer Ray also told the employees, including Plaintiff, that he believed Officer Burkhardt had only brought his cell phone into the prison on one occasion by accident, that Officer Burkhardt had not allowed an inmate to use the phone, and that staff should contact the State's Attorney to encourage the charges to be dropped. (Defendants' Undisputed Fact 6). Officer Ray provided staff with the State's Attorney's phone number. (Defendants' Undisputed Fact 6). However, Officer Ray's statement to Plaintiff and the others in the dining room that Officer Burkhardt only brought his cell phone into the facility on one occasion and that one time was accidental was inaccurate. (Plaintiff's Undisputed Fact 5).

## C.    Plaintiff Contacts the State's Attorney

Either on July 3, 2008, or within approximately two days, while off-duty, Plaintiff contacted Lawrence County State's Attorney Patrick Hahn. (Defendants' Undisputed Fact 8). When Plaintiff called the State's Attorney, he informed the State's Attorney's secretary and the

State's Attorney that he understood that Officer Burkhardt had been arrested for bringing a personal cell phone into work.  (Defendants Undisputed Fact 9).  Plaintiff then expressed his opinion that, if Officer Burkhardt had let an inmate use his cell phone, the State's Attorney should do whatever he sees fit with the case, but that, if Officer Burkhardt had not let an inmate use a cell phone, the case should be handled through IDOC's internal disciplinary process and not through criminal charges.  (Defendants' Undisputed Fact 9).

Plaintiff testified he contacted the State's Attorney's office because he:

> believed [he] was standing up for fellow employees
> that – that may at some point inadvertently walk
> through the front door with their cell phone
> clipped on their belt or in their pocket.  I hated to
> see a policy where someone just brought a cell
> phone in and would be charged with a crime as
> opposed to going through the disciplinary process.
> That was my only thought whenever I called.

(Plaintiff's Dep. pp. 33-34).[2]  Plaintiff also testified he contacted the

---

[2] Plaintiff objected to Defendants' statement of fact 10  regarding why Plaintiff contacted the State's Attorney's office.  Plaintiff asserted that Defendants "did not completely and accurately summarize [Plaintiff's] testimony."  Therefore, this Court only quotes Plaintiff's testimony which Plaintiff cited in his objection.

State's Attorney for two reasons–to offer his opinion and for future situations where an employee may bring a cell phone to work. (Plaintiff's Dep. pp. 34-35). Plaintiff relied on the information that he had received from Officer Ray when he contacted the State's Attorney. (Defendants' Undisputed Fact 11). After contacting the State's Attorney, Plaintiff did not contact any members of the media, newspapers, television reporters, or write about the issue in any online forums. (Defendants' Undisputed Fact 12).

## D.    IDOC Investigates Officer Ray

In July 2008, IDOC had, and continues to have, a policy requiring employees at the Lawrence Correctional Center to respect the confidentiality of records of internal investigations and personnel issues. (Defendants' Undisputed Fact 22, 23). Employees are prohibited from disclosing any information related to internal investigations or personnel issues, including the existence of an investigation or the identity of employees under investigation, and are prohibited from disclosing confidential or false information to the public. (Defendants' Undisputed

Fact 23).

Two Lawrence Correctional Center employees submitted incident reports to Defendant Ryker about the incident with Officer Ray in the lunchroom on July 3, 2008. (Defendants' Undisputed Fact 13). In his Affidavit, Defendant Ryker stated that he directed that Internal Affairs investigate the incident reports to determine if Officer Ray disseminated confidential or false information regarding Officer Burkhardt or conducted himself in a manner unbecoming of a State employee. (Defendants's Undisputed Fact 14).[3] Defendant Hodge, who was a Lieutenant in Internal Affairs at the time, investigated the incident reports regarding Officer Ray. (Defendants' Undisputed Fact 15).

Officer Ray was the first person interviewed by Defendant Hodge during the course of his investigation. (Plaintiff's Undisputed Fact 7).

_____

[3] Plaintiff admitted that this statement accurately reflected Defendant Ryker's affidavit but asserted it was "hard . . . to believe" Defendant Ryker recalled why he requested the investigation when, at his deposition, Defendant Ryker could hardly recall what Officer Ray was accused of doing. This is not a proper basis on which to dispute the statement. See Tuszkiewicz v. Allen-Bradley Co., Inc., 967 F.Supp. 1119 (E.D. Wis. 1997) (finding that a response to a statement of undisputed fact pointing to evidence in the record that would call a witness's credibility into doubt but that does not call into doubt the particular factual assertion is not sufficient for the court to find that a genuine issue of fact exists), aff'd 142 F.3d 440 (7th Cir. 1998) (unpublished). The statement in the affidavit does not contradict the deposition testimony. Therefore, the statement of fact is deemed admitted.

During the course of the interview, Officer Ray told Defendant Hodge that he did ask some Lawrence County taxpayers employed at Lawrence Correctional Center to contact the Lawrence County State's Attorney and tell him that the Burkhardt prosecution should be handled in-house. (Plaintiff's Undisputed Fact 8). Officer Ray advised the staff to do this if they believed they should, and Officer Ray provided them with the State's Attorney's office phone number. (Plaintiff's Undisputed Fact 8).

As part of his investigation of Officer Ray, Defendant Hodge asked four Lawrence Correctional Center employees who were interviewed— Jon McDonald, Plaintiff, Vickie Goins, and Janet Emmons—whether they contacted the State's Attorney after speaking with Officer Ray on July 3, 2008. (Defendants' Undisputed Fact 16). Defendant Hodge interviewed Plaintiff because Plaintiff was reported to have been present in the lunchroom with Officer Ray on July 3, 2008. (Defendants' Undisputed Fact 15).

Plaintiff refused to answer the question of whether he contacted the State's Attorney. (Undisputed Fact 17). McDonald, Goins, and

Emmons all answered the question of whether they contacted the State's Attorney, with some reporting that they had contacted the State's Attorney and others reporting that they had not. (Defendants' Undisputed Fact 19). No individual who was asked whether they contacted the State's Attorney was referred for discipline so long as the question was answered. (Defendants' Undisputed Fact 20).

Defendant Hodge claims that he was obligated to interview all witnesses as part of his investigation. (Plaintiff's Undisputed Fact 10). Despite the fact that Hodge was supposed to interview all witnesses, he did not interview Diana Shaffner or Robert Lovell. (Plaintiff's Undisputed Fact 11, 12).

E.    Facts Pertaining to Plaintiff's Refusal to Answer the Question

In July 2008, IDOC had, and continues to have, a policy requiring employees at the Lawrence Correctional Center to cooperate with any investigation conducted by internal investigators or Internal Affairs. (Defendants' Undisputed Fact 21, 22). If an employee fails to cooperate during an investigation, IDOC requires that the employee be disciplined.

(Defendants' Undisputed Fact 22).

According to Defendants, when Plaintiff refused to answer the question of whether he contacted the State's Attorney, Plaintiff did not know the purpose of the investigation of Officer Ray, although he felt the question was unreasonable. (Defendants' Fact 18). Plaintiff asserts that Defendants' statement is not entirely correct, citing to Plaintiff's testimony. <u>See</u> Response to Defendants' Fact 18. Plaintiff did testify that, when he was interviewed by Defendant Hodge, he did not know what the charges were against Officer Ray. (Plaintiff's Deposition, p. 42; Response to Defendants' Fact 18). Plaintiff also testified, however, that he asked Defendant Hodge if he was being personally investigated. (Plaintiff's Deposition p. 48). Defendant Hodge responded that it "depended on how [Plaintiff] answered the question of whether or not [Plaintiff] contacted the State's Attorney." (Plaintiff's Deposition, p. 48). When Plaintiff asked Hodge what the charges were, Defendant Hodge responded, "we'll figure that out later." (Plaintiff's Deposition, p.

48)[4].

Defendant Hodge did not order Plaintiff to answer him when he asked if Plaintiff had contacted the State's Attorney. (Plaintiff's Undisputed Fact 15). According to Defendant Hodge, an employee who is being questioned as part of an internal affairs investigation does not have to answer a question that is not reasonably related to the investigation. (Plaintiff's Undisputed Fact 16).

Defendant Hodge believed it was against policy for an employee to attempt to influence a state's attorney's decision on whether to prosecute. (Plaintiff's Undisputed Fact 2). Defendant Hodge testified that if "Lawrence County residents contact the state's attorney and they did contact the state's attorney then, obviously, if they're verbalizing their displeasure, then again, it goes back to the efforts of possible persuasion of the courts." (Plaintiff's Undisputed Fact 13). Defendant Hodge also testified that trying to have influence over the criminal justice

---

[4] Defendant Hodge denied making those statements, but on summary judgment, this Court must view the record in the light most favorable to Plaintiff. See Valance v. Wisel, 110 F.3d 1269, 1276 (7th Cir. 1997) ("Because we are required to view the summary judgment record in the light most favorable to [the plaintiff], we accept his version of this disputed factual question").

system was not IDOC's responsibility. (Plaintiff's Undisputed Fact 14).

## F. Discipline of Plaintiff

After Defendant Hodge finished his investigation of Officer Ray, he was promoted. (Defendants' Undisputed Fact 24). Consequently, Lieutenant Brian Stafford wrote a Report of Investigation summarizing Defendant Hodge's investigation and concluding that Officer Ray and Plaintiff had violated certain IDOC policies. (Defendants' Undisputed Fact 24).

Lieutenant Stafford then prepared a memorandum and packet referring Plaintiff for an employee review hearing. (Defendants' Undisputed Fact 25). The memorandum was submitted to Defendant Ryker, who directed that Plaintiff be referred for an employee review hearing. (Defendants' Undisputed Fact 25). Employee review hearings are required to be held when an employee is being considered for discipline greater than an oral reprimand. (Defendants' Undisputed Fact 27).

Defendants assert that Plaintiff was referred for an employee review

hearing because he did not answer the question of whether he contacted the State's Attorney during the investigation of Officer Ray. (Defendant's Fact 26). Although Plaintiff attempted to refute this fact on the basis that a jury could find that this "justification was a pretext for retaliation," Plaintiff also testified he was referred to the employee review board for not answering the question of whether or not he had called the State's Attorney. (Plaintiff's Deposition, p. 48).

On September 24, 2008, Plaintiff's review hearing was held. (Defendants' Undisputed Fact 28). Defendant Hess, an Administrative Assistant II located at the Robinson Correctional Center, traveled to Lawrence Correctional Center to serve as a hearing officer for the hearing. (Defendants' Undisputed Fact 28).

On October 8, 2008, Defendant Hess issued a written decision finding that Plaintiff's refusal to answer the question of whether he contacted the State's Attorney during the investigation of Officer Ray violated IDOC's policy requiring cooperation during investigations. (Defendants' Undisputed Fact 29). While Defendants assert that

Defendant Hess recommended Plaintiff receive a five-day suspension (Defendants' Fact 29), Plaintiff asserts that Defendant Hess asked Defendant Ryker for a recommendation before the hearing and that Defendant Ryker recommended a five-day suspension.[5] See Response to Fact 29).

On November 7, 2008, Walker, the Director of the IDOC at the time, ordered that Plaintiff receive a written reprimand instead of a five-day suspension. (Defendants' Undisputed Fact 31). Plaintiff never served any suspension related to his refusal to cooperate. (Defendants' Undisputed Fact 32).

Plaintiff filed a grievance regarding his discipline. (Defendants' Undisputed Fact 33). The grievance was resolved through an agreement that the written reprimand would be removed from Plaintiff's personnel file after one year if there were no further similar incidents. (Defendants' Undisputed Fact 33).

---

[5] The parties dispute the proper interpretation of Defendant Ryker's testimony because he did not say when Hess asked him for his recommendation. Therefore, this Court views Defendant Ryker's testimony in the light most favorable to Plaintiff. See Domka v. Portage County, Wis., 523 F.3d 776, 782 (7th Cir. 2008) (on a motion for summary judgment, ambiguities must be resolved in the light most favorable to the non-movant).

Defendants assert that Defendants Hodge, Ryker, and Hess never knew whether Plaintiff called the State's Attorney and what, if anything, Plaintiff said to the State's Attorney. (Defendants' Fact 34). Plaintiff disputes this, citing evidence that Defendant Hodge spoke with State's Attorney Hahn, who told Hodge that individuals from the correctional facility had been calling him about the Burkhardt prosecution. (Response to Fact 34).

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff's claims are based on federal law. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Venue is proper because all of the Defendants reside in Illinois and one of the Defendants, Roger Walker, resides in Macon County. See 28 U.S.C. § 1391(b) (a civil action where jurisdiction is not founded solely on diversity of citizenship may be brought in a judicial district where any defendant resides, if all defendants reside in the same State). This case

was originally brought in the Urbana Division but transferred to the Springfield Division in September 2011.

### III.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Fed.R.Civ.P. 56(c).  A moving party must show that no reasonable fact-finder could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997).  Facts must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn for the non-movant.  See Trentadue v. Redmon, 619 F.3d 648, 652 (7th Cir. 2010).

### IV.  ANALYSIS

A claim for First Amendment retaliation under § 1983 involves a three-step inquiry: (1) whether the employee's speech was constitutionally protected; (2) whether the employee suffered a deprivation because of the employer's action; and (3) whether the protected speech was a but-for cause of the employer's action. Kodish v. Oakbrook Terrace Fire Protection Dist., 604 F.3d 490, 501 (7th Cir. 2010), (noting the United States "Supreme Court recently clarified that unless a federal statute provides otherwise, the plaintiff bears the burden of demonstrating but-for causation in suits brought under federal law"), citing Gross v. FBL Fin. Serv., Inc., 129 S. Ct. 2343, 2351 (2009); see also Greene v. Doruff, ___ F.3d ___, 2011 WL 4839162 (7th Cir. 2011) (clarifying the causation issue in First Amendment cases).

## A.    Questions of Fact Remain Regarding Defendants' Personal Involvement

Defendants argue (1) Defendant Hodge was not personally involved in the alleged deprivation because he merely investigated incident reports regarding another employee and asked Plaintiff questions during the investigation; (2) Defendant Ryker only recommended

discipline and was not involved in the alleged deprivation; and (3) Defendant Hess merely served as a hearing officer and recommended, but did not impose, discipline on Plaintiff.

Plaintiff responds that (1) Defendant Hodge was responsible for the investigation and made incriminating statements to Plaintiff; (2) Defendant Ryker pushed for a five-day suspension and told Defendant Hess that he recommended a five-day suspension; and (3) Defendant Hess was the person responsible for the predisciplinary hearing and "did what Ryker instructed her to do."

"Liability under § 1983 must be premised on personal involvement in the deprivation of the constitutional right, not vicarious liability." Payne for Hicks v. Churchich, 161 F.3d 1030, 1042 n. 15 (7th Cir. 1998); Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation") (emphasis in original). However, a defendant need not directly participate in the violation if: (1) he "acts or fails to act with a deliberate and reckless

disregard of [the] plaintiff's constitutional rights"; or (2) "the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986); see also Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir. 1988) ("The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights"). Personal involvement is a question of fact. Williams v. Smith, 781 F.2d 319, 323 (2nd Cir. 1986).

The facts presented here, taken in the light most favorable to Plaintiff, suggest Defendants Hodge, Hess, and Ryker all have the requisite involvement to potentially subject them to liability.

## B. Official Capacity Claims are Barred by the Eleventh Amendment

Defendants argue that Defendants are named in their official capacities but that Plaintiff seeks no relief from an ongoing violation of federal law. Therefore, Defendants assert the claims against them in their official capacity are barred by the Eleventh Amendment. Plaintiff does

not address this issue in his response to the Motion for Summary Judgment.

A suit against a state official in his official capacity is a suit against the State. Power v. Summers, 226 F.3d 815, 818 (7th Cir. 2000). A suit against the State, or state official in his official capacity, is barred by the Eleventh Amendment unless: (1) Congress has abrogated the State's immunity from suit, (2) a State has waived its immunity and consented to suit, or (3) the suit is one for prospective injunctive relief pursuant to Ex Parte Young, 209 U.S. 123, 159-60 (1908). Sonnleitner v. York, 304 F.3d 704, 717 (7th Cir. 2002). None of these exceptions apply. Therefore, the official capacity claims are dismissed.

## C.    The Parties Dispute the Speech That is the Basis of the Suit

The parties dispute the speech for which Plaintiff clams he was retaliated. Defendants assert that Plaintiff claims he was retaliated against for not answering the question of whether he contacted the State's Attorney. Defendants point to Plaintiff's deposition testimony, wherein Plaintiff testified that the speech for which he was retaliated

against was the statement to Defendant Hodge that Plaintiff would not answer the question of whether he contacted the State's Attorney.

In his response to the Motion for Summary Judgment, Plaintiff asserts that he engaged in protected speech when he spoke with the State's Attorney, that the question about whether he spoke to the State's Attorney infringed on his First Amendment rights, that the question was not relevant to the investigation, and that the discipline imposed resulted from the exercise of his First Amendment rights.

Plaintiff has pursued a consistent theory. In his Complaint, he asserted that he spoke to the State's Attorney as a citizen and that his speech did not impede IDOC operations. (Cmplt. ¶¶ 18, 19). He further alleged that as a result of his speech, he suffered retaliation. (Cmplt. ¶ 20). While Plaintiff did testify at his deposition that the speech for which he was retaliated against was the refusal to answer the question, that refusal was directly tied to the speech to the State's Attorney. This Court will analyze Plaintiff's claim under Plaintiff's asserted theory.

**D.      For Purposes of Summary Judgment, Plaintiff's Speech Was Constitutionally Protected**

This Court employs a two-part inquiry to determine whether a public employee has a First Amendment right: (1) whether the plaintiff spoke as a citizen on a matter of public concern, and (2) if so, whether the "relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (holding that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities"). These two factors are questions of law. Hensley v. Jasper Police Dept., 163 F.Supp.2d 1006, 1012 (S.D. Ind. 2001).

**1.      Whether Plaintiff Spoke as a Citizen on a Matter of Public Concern**

To determine whether Plaintiff engaged in constitutionally protected speech, this Court must determine that he spoke in the capacity of a private citizen and spoke on a matter of public concern. Valentino v. Village of South Chicago Heights, 575 F.3d 664, 671 (7th

Cir. 2009).  When determining whether an employee spoke as a citizen, this Court examines "whether he made his statements pursuant to his official duties."  Callahan v. Fermon, 526 F.3d 1040, 1044 (7th Cir. 2008); Garcetti, 547 U.S. at 421 (court must determine whether the speech "owes its existence to a public employee's professional responsibilities").

Here, Plaintiff spoke to the State's Attorney to give his opinion regarding the charges brought against Officer Burkhardt.  Nothing in the record shows that taking such action was a duty of Plaintiff's job or a task Plaintiff was expected to perform.  The Court finds Plaintiff spoke as a citizen when he spoke to the State's Attorney.  See, e.g., Bourque v. Town of Hampton, 2007 WL 1575250, at*7 (D.N.H. 2007) (finding that the police officer who was the victim of a crime spoke as a citizen on a matter of public concern when he voiced his opinion about how assault charges should have been handled).

In deciding whether a statement is a matter of public concern, a court must examine the "content, form, and context of a given statement,

as revealed by the whole record." See Pickering v. Board Of Educ. of Township High Sch. Dist. 205, 391 U.S. 563, 568 (1968). Of these factors, content is the most important. See Yoggerst v. Hedges, 739 F.2d 293, 296 (7th Cir. 1994). The Court may also consider the choice of forum and motivation for speaking. Cygan v. Wisconsin Dept. of Corrections, 388 F.3d 1092, 1099 (7th Cir. 2004).

A statement is a matter of public concern if it can be "fairly considered as relating to any matter of political, social or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). This Court considers whether the speech is more like an employee grievance or a subject of general interest and value to the public. Doyle v. Chief Judge of Tenth Judicial Circuit, 2007 WL 2572387, at *6 (C.D. Ill. 2007).

Defendants argue that Plaintiff's speech to the State's Attorney was not speech on a matter of public concern but, rather, Plaintiff discussing his opinion regarding internal personnel matters. While Defendants concede that the subject of whether criminal charges should be pursued could be of general concern to the public, Defendants argue Plaintiff's

speech focused on the import of the criminal charges to IDOC employees. In contrast, Plaintiff asserts he spoke to a public official about how the public official was performing his duties.

This Court finds that the content and context of Plaintiff's speech related to Plaintiff's opinion of the State's Attorney's handling of a criminal matter. Plaintiff spoke directly to the State's Attorney and expressed his opinion. Moreover, Plaintiff did not speak to the State's Attorney about a matter that solely affected Plaintiff. See, e.g., McKenzie v. Milwaukee Co., 381 F.3d 619, 626 (7th Cir. 2004) ("The speech must relate to a community concern rather than 'merely a personal grievance of interest only to the employee,' and so complaints about personnel matters generally are not constitutionally protected"), quoting Sullivan v. Ramirez, 360 F.3d 692, 699 (7th Cir. 2004). The context and the form of Plaintiff's speech is consistent with an expression on a matter of public concern rather than vindication of a personal interest. Bivens v. Trent, 591 F.3d 555, 561 (7th Cir. 2010) (involving an internal grievance on a matter of purely private interest that only

addressed the effect on the plaintiff and his own work environment).

Moreover, taking the facts in the light most favorable to Plaintiff, Plaintiff's motive was to comment on criminal charges. Even if part of Plaintiff's motive was directed toward himself and other correctional officers who may, in the future, accidentally bring a cell phone into the facility, this fact would not mean that the speech cannot also be a matter of public concern. See Bivens v. Trent, 591 F.3d 555, 561 (7th Cir. 2010) ("fact that the speaker was partially motivated by personal concerns does not necessarily mean the speech cannot also be a matter of public concern"). This Court finds that the overriding reason for the speech was not related to Plaintiff's personal interests as an employee. cf. Hartman v. Board of Trustees of Community College Dist. No. 508, Cook County, Ill., 4 F.3d 471-72 (7th Cir. 1993) (concluding the plaintiff's speech related predominately to her personal interest). Therefore, Plaintiff spoke on a matter of public concern. See, e.g., Bourque v. Town of Hampton, 2007 WL 1575250, at *7 (D.N.H. 2007) ("plaintiff's opinion about how the 2003 assault charges should have

been handled was an expression about a matter of public concern");

Wiseman v. Schultz, 2004 WL 783084, *3 (N.D. Ill. 2004) (finding the plaintiff stated a claim for First Amendment retaliation; the plaintiff's statements to the State's Attorney were designed to shed light on wrongdoing within the police department and constituted speech in a public forum).

2.    Defendants Failed to Address the Balancing Test in the Context of Plaintiff's Speech to the State's Attorney

Having found that Plaintiff spoke as a citizen on a matter of public concern, the Court must next "balance the interest of [the plaintiff], as a citizen, in commenting upon matters of public concern and the State's interest, as an employer, in promoting the efficiency of the public service it performs." Pickering, 391 U.S. at 568.   The Court considers seven factors when conducting this balancing test:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform [his] responsibilities; (4) the time, place, and manner of the speech; (5)

> the context within which the underlying dispute
> arose; (6) whether the matter was one on which
> debate was vital to informed decision-making; and
> (7) whether the speaker should be regarded as a
> member of the general public.

Gustafson v. Jones, 290 F.3d 895, 909 (7th Cir. 2002). When assessing

this balance, "[t]he initial, and often determinative, question is whether

the speech interferes with the employee's work or with the efficient and

successful operation of the office." See Knapp v. Whitaker, 757 F.2d

827, 842 (7th Cir. 1985).

Here, Defendants focused solely on Plaintiff's failure to answer the

question during the investigation and provided no argument on why

IDOC's interest outweighed Plaintiff's interest in speaking. As the

movant, Defendants bear the burden of showing they are entitled to

judgment as a matter of law. See Fed.R.Civ.P. 56(a); Kolpak v. Bel, 619

F.Supp. 359, 363 (N.D. Ill. 1985). Therefore, for purposes of summary

judgment, this Court finds that Plaintiff's interest in speaking

outweighed IDOC's interest in restricting that speech.

E.     The Deprivation Was Likely to Deter Free Speech

Defendants assert that Plaintiff did not suffer any deprivation that would deter free speech. According to Defendants, the written reprimand that would be withdrawn from Plaintiff's personnel file was a minor deprivation that was not likely to deter free speech.

In the § 1983 context, an adverse employment action is an action that is "sufficiently adverse to deter the exercise of the individual's right to free speech." Hutchins v. Clarke, ___ F.3d ____, 2011 WL 5027236, at *6 (7th Cir. 2011). A reprimand can constitute a deprivation. See Glass v. Dachel, 2 F.3d 733, 741 (7th Cir. 1993) ("If a reprimand letter addresses constitutionally protected speech, the plaintiff can establish an infringement of constitutional rights because of its deterrent effect").

## F. Questions of Fact Remain Whether Plaintiff's Speech was the But-For Cause of his Reprimand

In Greene v. Doruff, ___ F.3d ___, 2011 WL 4839162 (7th Cir. 2011), the Seventh Circuit clarified what a Plaintiff must show for causation in a First Amendment case. The Greene court held that a plaintiff, to satisfy his burden of production on the issue of causation, must show that "a violation of his rights was a sufficient condition of the

harm for which he seeks redress; he need not show it was a necessary condition." Id. at ___, 2011 WL 4839162, at *4, citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-86 (1977). If the plaintiff satisfies that burden, the defendant may "rebut with evidence that the plaintiff's exercise of his constitutional rights though a sufficient condition was not a necessary condition" of the harm. Greene, ___ F.2d at ___, 2011 WL 4839162, at *4. That is, the defendant must show that the disciplinary action would have occurred anyway. Id.; see also Zellner v. Herrick, 639 F.3d 371, 378 (7th Cir. 2011) (further providing that if the defendant satisfies his burden, the plaintiff must demonstrate that the proffered reason was pretextual and that retaliatory animus was the real reason for the action).

Defendants have come forward with evidence that the reprimand would have occurred anyway. IDOC policy requires that employees cooperate with an investigation, and the failure to cooperate requires an employee be disciplined. Defendants assert that Plaintiff was disciplined for failing to cooperate with an investigation when he refused to answer

the question of whether he spoke to the State's Attorney. Plaintiff even admits, in his Response to the Motion for Summary Judgment, that such justification–if true–would be a legitimate, nonretailiatory justification for the discipline. <u>See</u> Response pp. 24, 32. Therefore, Plaintiff must present some evidence from which a jury could find that the proffered reason was pretextual.

Plaintiff can show pretext either (1) directly, with evidence showing that "retaliation was the most likely motive for terminating him," or (2) indirectly, by showing that Defendants' "proffered justifications were not worthy of credence." <u>Vukadinovich v. Board of School Trustees of North Newton School Corp.</u>, 278 F.3d 693, 699-700 (2002). To show that the proffered justification was not worthy of credence, Plaintiff must show Defendants' justification had no basis in fact, was not the real reason for the reprimand, or was insufficient to warrant the reprimand. <u>Id.</u> at 700.

Defendants argue that Plaintiff cannot establish that his speech was a but-for cause of the alleged retaliation. Defendants claim the other

employees who answered the question of whether they contacted the State's Attorney were not disciplined regardless of how they answered the question. According to Defendants, this shows that Plaintiff was disciplined for his refusal to cooperate, not for any speech made to the State's Attorney. Defendants also argue that because Plaintiff did not answer the question, they did not know whether Plaintiff contacted the State's Attorney or what, if anything, Plaintiff said to the State's Attorney.

This Court first notes that Plaintiff has not pointed to any evidence that Defendants Ryker or Hess knew whether Plaintiff spoke to the State's Attorney or what he might have said. Defendants Ryker and Hess both denied having any knowledge. See Wackett v. City of Beaver Dam, Wis., 642 F.3d 578, 583 (7th Cir. 2011) (finding that the plaintiff could not establish causation because he could not show that any of the defendants knew of his purportedly protected speech). In his response to the Motion for Summary Judgment, Plaintiff pointed to evidence that Defendant Hodge spoke to State's Attorney Hahn, who told Defendant

Hodge that employees from the correctional facility had called about the Burkhardt charges. A reasonable inference can be drawn that Defendant Hodge learned that Plaintiff contacted the State's Attorney and learned what Plaintiff told him. A reasonable inference can also be drawn that Defendants Hess and Ryker also knew, or suspected, that Plaintiff had spoken to the State's Attorney.

On the issue of pretext, Plaintiff points to a number of pieces of circumstantial evidence from which, according to Plaintiff, a jury could conclude that Plaintiff was retaliated against because of his speech to the State's Attorney: (1) Defendant Hodge testified that he believed it violated IDOC policy for Plaintiff to speak to the State's Attorney; (2) it was unnecessary to interview Plaintiff or Officer Ray because Officer Ray's lack of disclosure of confidential information was obvious, given that the information he had was inaccurate; (3) it was unnecessary to interview Plaintiff because Officer Ray admitted he spoke to the State's Attorney and encouraged others to do so; (4) Hodge told Plaintiff that whether Plaintiff was under investigation depended on whether Plaintiff

spoke to the State's Attorney and when asked what the charges would be, Hodge responded, "[W]e'll figure that out later"; (5) Defendants failed to follow proper policies and procedures; specifically, Defendant Hodge did not interview all witnesses and Defendant Ryker told Hess what he wanted her to recommend before the predisciplinary hearing ever occurred. In addition, Defendant Hodge testified that an employee who is being questioned as part of an Internal Affairs investigation does not have to answer a question that is not reasonably related to the investigation.

This case is unusual in that the protected speech is tied to the question Plaintiff did not answer. Had Plaintiff been reprimanded for failing to answer a question unrelated to his protected speech, his protected speech would clearly not be the but-for cause of the reprimand. Here, however, the very question asked went to Plaintiff's purportedly protected conduct. An inference can be drawn from the evidence Plaintiff presented that the true reason for the reprimand was not Plaintiff's failure to tell Defendants whether he spoke to the State's

Attorney but Plaintiff's action in speaking to the State's Attorney.

Taking the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in favor of Plaintiff, a reasonable jury could find that Plaintiff was reprimanded for speaking to the State's Attorney and not for failing to answer the question during the investigation.

## G.   Defendants are Not Entitled to Qualified Immunity on this Record

Qualified immunity protects governmental actors "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances the interest of holding "public officials accountable when they exercise power irresponsibly" with the interest in shielding officials from "liability when they perform their duties reasonably." Pearson v. Callhan, 555 U.S. 223, 231 (2009). "[Q]ualified immunity provides 'ample room for mistaken judgments' and protects government officers except for the 'plainly incompetent and

those who knowingly violate the law.'" Saffell v. Crews, 183 F.3d 655, 658 (7th Cir. 1999), quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991).

To determine whether defendants are entitled to qualified immunity, a court must determine: (1) "whether the facts alleged show that the [defendant's] conduct violated the plaintiff's constitutional rights" and (2) "whether the right was clearly established in light of the specific context of the case so that a reasonable official would have understood that his conduct would violate the right." Patterson v. Burns, 670 F.Supp.2d 837, 847 (S.D. Ind. 2009), citing Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. 223. The Court may, in its discretion, address the second prong of the test first. Pearson, 555 U.S. at 242.

Questions of fact remain whether Defendants' conduct violated Plaintiff's constitutional rights. On the second prong of qualified immunity, this Court finds that in 2008, the law was clearly established that a reasonable person would have known that an employee's

communications with a State's Attorney about pending criminal charges would be entitled to constitutional protection.  It is clearly established that "members of the public have a right of access to criminal proceedings secured by the First Amendment." <u>Tennessee v. Lane</u>, 541 U.S. 509, 523 (2004).  This would include commenting on how criminal charges are handled.  <u>See</u> <u>Bourque,</u> 2007 WL 1575250, at *7 (finding that the plaintiff's opinion on how assault charges should be handled was a matter of public concern and noting it was well-settled that members of the public have a right of access to criminal proceedings).

Moreover, more than 40 years have passed since <u>Pickering</u> was decided, and courts have consistently held that the First Amendment protects employees from being retaliated against for exercising their right to speech.  As noted above, Defendants provided no justification for why they would have been entitled to reprimand Plaintiff for speaking to the State's Attorney on a matter of public concern (of course, Defendants likely did not provide such justification because Defendants contend that they did not reprimand Plaintiff for speaking to the State's Attorney).

Given the fact-intensive nature of the <u>Pickering</u> balancing test[6], and

Defendants' failure to adequately address it, this Court cannot find

Defendants are entitled to qualified immunity at this time.  <u>See</u>, <u>e.g.</u>,

<u>Rohr v. Nehls</u>, 2006 WL 2927657, at *8 (E.D. Wis. 2006) (noting that

the "fact-intensive nature of the <u>Pickering</u> balance often muddies the

contours of what constitutes established law"); <u>Glass</u>, 2 F.3d at 745

(noting that because a question of material fact remained regarding why

the defendants' reprimanded the plaintiff, qualified immunity could not

be decided).

## V. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment

(d/e 17) is GRANTED IN PART AND DENIED IN PART.  Defendants

Randle, Walker, and Stafford are entitled to summary judgment on

Count I, and all the Defendants are entitled to summary judgment on

Count II.  The official capacity claims against Defendants Hodge, Ryker

and Hess are DISMISSED.  Count I remains pending against Defendants

---

[6] This Court notes, however, that the issue is ultimately a question of law.

Hodge, Ryker, and Hess in their individual capacities.  This matter

remains scheduled for a final pretrial conference on December 12, 2011

at 2:30 p.m.

ENTER: November 15, 2011

FOR THE COURT:

                            s/Sue E. Myerscough        
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
