## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| DWAYNE VOLKMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  10-2132 |
| ) | |
| MICHAEL RANDLE, ROGER WALKER, ) | |
| LEE RYKER, MARC HODGE, BRIAN ) | |
| STAFFORD, and BARBARA HESS, ) | |
| ) | |
| Defendants. ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

On March 16, 2012, this Court held an evidentiary hearing to

address whether Plaintiff Dwayne Volkman's speech was constitutionally

protected.  Plaintiff testified on his own behalf.  Defendant Marc Hodge,

currently the Acting Warden of the Lawrence Correctional Center,

testified on behalf of himself and the other two remaining Defendants in

this case, Lee Ryker, who at the relevant time was the Warden of the

facility, and Barbara Hess, who at the relevant time was an

Administrative Assistant 2 for the Illinois Department of Corrections

(DOC). Having heard the testimony of the witnesses and the arguments of counsel for the parties, this Court finds that Plaintiff's speech was not constitutionally protected and, even if it were, Defendants would be entitled to qualified immunity.

## I. FACTS

Plaintiff Dwayne Volkman is employed by DOC as a Casework Supervisor at the Lawrence Correctional Center, although at the hearing he testified he is currently on disability leave. In 2008, the Lawrence Correctional Center was a Level II high security facility.

In 2008, Plaintiff received a written reprimand purportedly for failing to answer a question during an internal investigation. Plaintiff, believing he was in fact retaliated against for speaking to the State's Attorney about the criminal prosecution of a coworker, brought suit.

At the evidentiary hearing held before this Court on March 16, 2012, Plaintiff testified that in July 2008, he had a conversation with his co-worker, Chad Ray. The conversation concerned another co-worker, Jody Burkhardt, and took place in the employee dining area of the

Lawrence Correctional Center during lunch. Ray told Plaintiff and the other individuals sitting at the table with Plaintiff that the State's Attorney's office had filed charges against Burkhardt for bringing a cell phone into the facility. Ray informed Plaintiff and the others that Ray thought Burkhardt had been charged with a felony offense and that if any of them, as citizens of the County, felt like they should contact the State's Attorney to give him their opinion on how the matter should be pursued, they should feel free to do that.

Later that day, after work, Plaintiff called the State's Attorney's office using his personal cell phone. The State's Attorney was unavailable so Plaintiff left a message with the secretary. Plaintiff told the secretary that he was made aware that charges had been filed against Burkhardt and that, as a citizen of the County, he believed that any type of "incarceration" should not be pursued and that the State's Attorney might want to consider letting the matter be handled through the disciplinary process of DOC. Plaintiff told the secretary the State's Attorney did not need to call him back and that he was just calling as a

citizen with his own opinion.

The State's Attorney called Plaintiff later that evening at home. The State's Attorney asked Plaintiff what was going on at the facility. Plaintiff told the State's Attorney that he did not know the specific allegations against Burkhardt, just that it involved a cell phone, but that in his opinion, if Burkhardt had allowed an inmate to use the cell phone, that the State's Attorney should pursue the prosecution to the fullest extent. However, if Burkhardt had just brought in the cell phone, no inmate used it, and Burkhardt did not do anything wrong with it inside the facility, the matter should be handled through the disciplinary process of DOC.

Although not testified to at the hearing, the evidence in the record shows that in November 2008, Plaintiff received a written reprimand. The parties dispute the reason for the written reprimand, but for purposes of the evidentiary hearing, the Court assumes Plaintiff was reprimanded for his speech to the State's Attorney.

Hodge, who was an Internal Affairs investigator when the events in

question occurred, also testified at the hearing. Hodge identified the institutional directives, administrative directives, rules of conduct, and employee handbook that govern employee conduct in the facility. Those directives and rules require that the facility employees (1) comply with and enforce all institutional and departmental rules, regulations, and directives; (2) obey all federal, state, and local laws; (3) conduct themselves on-duty and off-duty in a manner that does not reflect unfavorably on the employee or DOC; and (4) respect the importance of all elements of the criminal justice system. <u>See</u> Exhibit 3 (Institutional Directive), Exhibit 4 (Administrative Directive), and Exhibit 5 (Rules of Conduct, Illinois Administrative Code). Hodge also testified that all employees at the facility, as part of their jobs, are responsible for enforcing the rules and ensuring the security of the prison. In addition, a supervisor's loyalty is important in the paramilitary structure of the facility.

According to Hodge, Plaintiff's act of contacting the State's Attorney violated these policies because doing so offset the overall

mission of DOC and affected the security of the prison, particularly because Plaintiff held a supervisory position. In this case, the underlying prosecution of Burkhardt involved Burkhardt bringing a cell phone into the prison, an act prohibited by the institutional directives because such act poses a high security risk in the correctional setting. Hodge explained that even if a cell phone is brought into the facility accidentally, it poses a serious security risk to the facility because the cell phone could be stolen by an inmate. If an inmate obtained a cell phone, that cell phone could be used to contact witnesses, contact fellow gang members, create video, and disrupt criminal justice proceedings.

Hodge testified that Plaintiff's act of discouraging the State's Attorney to prosecute Burkhardt undermined the prison's security, offset the overall mission of DOC, and set a bad example. Hodge further testified that Burkhardt had in fact used the cell phone in the facility–which indicated Burkhardt knew he had the cell phone in the facility and failed to report it– and had used it to impede an investigation.

## II. ANALYSIS

"[T]he First Amendment, made applicable to the states through the Fourteenth Amendment, prohibits the government from retaliating against its employees for engaging in protected speech." Gross v. Town of Cicero, Il., 619 F.3d 697, 703–04 (7th Cir. 2010). To prove a claim for First Amendment retaliation, Plaintiff must prove that: (1) his speech was constitutionally protected; (2) he suffered a deprivation because of the employer's action; and (3) the speech was a substantial or motivating factor in the alleged retaliatory action. Hutchins v. Clarke, 661 F.3d 947, 955 (7th Cir. 2011); Greene v. Doruff, 660 F.3d 975, 979 (7th Cir. 2011). If Plaintiff meets his burden, Defendants have the opportunity to establish that the same action would have been taken in the absence of the employee's protected speech. Hutchins, 661 F.3d at 955; see also Greene, 660 F.3d at 979 ("If the defendant fails to carry that burden, the inference is that 'but for' causation (that is, a necessary condition) has been shown").

The issue at this evidentiary hearing is whether Plaintiff's speech

was constitutionally protected.  That is a question of law.  <u>Messman v. Helmke</u>, 133 F.3d 1042, 1046 (7th Cir. 1998); <u>Hensley v. Jasper Police Dept.</u>, 163 F. Supp. 2d 1006, 1012 (S.D. Ind. 2001).

## A.    Plaintiff's Speech Was Not Constitutionally Protected

To determine whether Plaintiff's speech was constitutionally protected, this Court must determine (1) whether Plaintiff spoke as a citizen on a matter of public concern; and, if so, (2)  whether the "relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006).

Whether Plaintiff engaged in constitutionally protected speech depends on whether Plaintiff spoke as a private citizen and on a matter of public concern.  <u>Valentino v. Village of South Chicago Heights</u>, 575 F.3d 664, 671 (7th Cir. 2009).  When determining whether an employee spoke as a citizen, this Court examines "whether he made his statements pursuant to his official duties." <u>Callahan v. Fermon</u>, 526 F.3d 1040, 1044 (7th Cir. 2008).

Here, Plaintiff spoke to the State's Attorney as a private citizen. Plaintiff's speech to the State's Attorney was made off-duty and was not a part of his professional responsibilities.  See Garcetti, 547 U.S. at 421 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen"); Bourque v. Town of Hampton, No. 06-cf-090-JM, 2007 WL 1575250, at*7 (D.N.H. 2007) (finding that the plaintiff police officer, who was the victim of a crime, spoke as a citizen on a matter of public concern when he voiced his opinion about how assault charges should have been handled).

This Court also finds that Plaintiff spoke on a matter of public concern.  A statement is a matter of public concern if it can be "fairly considered as relating to any matter of political, social or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983).   An examination of the content, form, and context of the statement indicates that Plaintiff's speech to the State's Attorney about pending criminal charges was a subject of general interest and value to the public.  See,

e.g., <u>Tennessee v. Lane</u>, 541 U.S. 509, 523 (2004) (noting that the United State Supreme Court has "recognized that members of the public have a right of access to criminal proceedings secured by the First Amendment"); <u>Bourque</u>, 2007 WL 1575250, at *7 ("plaintiff's opinion about how the 2003 assault charges should have been handled was an expression about a matter of public concern"); <u>Rohr v. Nehls</u>, 2006 WL 2927657, at *5 (E.D. Wisc. 2006) ("Speech criticizing the sheriff's approach to the conduct of criminal investigations is clearly a matter of public concern").  Moreover, although Plaintiff may have had a personal stake in the subject matter, a "personal stake in the subject matter of the speech does not necessarily remove the speech from the scope of public concern."  <u>Phelan v. Cook County</u>, 463 F.3d 773, 791 (7th Cir. 2006) (quotation omitted).

Having found that Plaintiff spoke as a citizen on a matter of public concern, the Court must next "balance the interest of [the plaintiff], as a citizen, in commenting upon matters of public concern and the State's interest, as an employer, in promoting the efficiency of the public service

it performs." <u>Pickering v. Board Of Educ. of Township High Sch. Dist. 205</u>, 391 U.S. 563, 568 (1968). The Court considers seven factors when conducting this balancing test:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform [his] responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public.

<u>Gustafson v. Jones</u>, 290 F.3d 895, 909 (7th Cir. 2002). When assessing this balance, "[t]he initial, and often determinative, question is whether the speech interferes with the employee's work or with the efficient and successful operation of the office." <u>Knapp v. Whitaker</u>, 757 F.2d 827, 842 (7th Cir. 1985).

Defendants assert that DOC's interest in maintaining the security of the prison and the loyalty of its employees outweighs Plaintiff's interest in commenting on a state law. This Court agrees.

Clearly, the time, place, and manner of Plaintiff's speech was less likely to create problems for DOC in maintaining discipline or harmony among co-workers.  See Rohrs, 2006 WL 2927657, at *6 (manner in which the complaint was made suggested "limited disruptive potential;" the plaintiff "did not call a press conference or seek to embarrass his boss in any humiliating way, nor did he spread rumors or seek to undermine his boss").  However, DOC has a significant interest in maintaining security in the prison and the loyalty of its employees.  Cell phones pose a great risk in the prison setting.  Plaintiff, as a supervisor, had a responsibility to support the prison regulations, which prohibited bringing a cell phone into the facility even accidentally.  By encouraging the State's Attorney not to bring criminal charges against Burkhardt, Plaintiff offset the overall mission of DOC and minimized the danger of bringing cell phones into the facility.  Therefore, the Court finds that DOC's interest as an employer in promoting effective, efficient, and secure services outweighs Plaintiff's interest as a citizen in commenting upon matters of public concern.

## B.  Alternatively, Defendants are Entitled to Qualified Immunity

Even if the <u>Pickering</u> balancing test had been close and DOC's interests did not clearly outweigh Plaintiff's interests, Defendants would be entitled to qualified immunity.  Qualified immunity protects governmental actors "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Qualified immunity balances the interest of holding "public officials accountable when they exercise power irresponsibly" with the interest in shielding officials from "liability when they perform their duties reasonably."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009).  "[Q]ualified immunity provides 'ample room for mistaken judgments' and protects government officers except for the 'plainly incompetent and those who knowingly violate the law.'"  <u>Saffell v. Crews</u>, 183 F.3d 655, 658 (7th Cir. 1999) (<u>quoting</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991)).

To determine whether defendants are entitled to qualified

immunity, a court must determine: (1) "whether the facts alleged show that the [defendant's] conduct violated the plaintiff's constitutional rights" and (2) "whether the right was clearly established in light of the specific context of the case so that a reasonable official would have understood that his conduct would violate the right."  Patterson v. Burns, 670 F. Supp.2d 837, 847 (S.D. Ind. 2009), citing Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. 223.  The Court may, in its discretion, address the second prong of the test first. Pearson, 555 U.S. at 242.  Under the second prong, this Court must not "define clearly established law at a high level of generality."  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2084 (2011).

Here, even if DOC's interests had not outweighed Plaintiff's interests, the Pickering balancing test was close.  As such, the law was not so clear as to put Defendants on notice that reprimanding Plaintiff for his speech would violate the Constitution.  See Diaz-Gigio v. Santini, 652 F.3d 45, 52 (1st Cir. 2011) (finding the defendants were entitled to qualified immunity because the outcome of the Pickering balancing test

was not so clear as to put reasonable officials on notice that firing the plaintiff would violate the law). Reasonable officials could have concluded that (1) investigating and interviewing Plaintiff regarding his speech and (2) reprimanding him for his speech did not violate the First Amendment. See, e.g., Waters v. Churchill, 511 U.S. 661, 675 (1994) ("When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her").

Defendants presented evidence to support the reasonableness of their belief that Plaintiff's speech had the potential to disrupt prison security and the loyalty of the employees. Contra Gustafson, 290 F.3d at 913 (noting that "[o]n a different record, there might have been a question about how clear it was that the public employer could not punish employees who exercised First Amendment rights, if the employer cited efficiency concerns as its reasons); see also Rohrs, 2006 WL 2927657, at *8 (noting that while the "Pickering balance often muddies

the contours of what constitutes established law, the <u>Gustafson</u> court's approach to qualified immunity does not allow an employer simply to 'cite' efficiency concerns and thereby become entitled to don the cloak of immunity" ).  Because it was not clearly established that reprimanding Plaintiff for speaking to the State's Attorney about a pending prosecution of a correctional facility co-worker would violate the Constitution, Defendants are entitled to qualified immunity.

III. CONCLUSION

For the reasons stated, Plaintiff's speech was not constitutionally protected and, even if it were, Defendants would be entitled to qualified immunity.  The jury trial scheduled for June 12, 2012 is VACATED. Judgment is entered in favor Defendants and against Plaintiff.  CASE CLOSED.

ENTER: March 22, 2012

FOR THE COURT:

s/Sue E. Myerscough

SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE